# United States District Court
# For The District of Columbia

| | |
|---|---|
| **United States of America,** | |
| v. | Case No. 25-mj-177 (MJS) |
| **Carlton Jonson,** | |
| Defendant. | |

## Motions to Dismiss with Prejudice and for Expungement

### I.     Introduction

Video evidence from August 16, 2025, shows that Carlton Jonson, a half-circle of four officers around him, swatted an officer's arm downwards after the officer reached his hand out towards his body.[1] For that, at least seven officers violently took Mr. Jonson down onto the sidewalk and dogpiled on top of him, from which he does not emerge for 2 minutes and 40 seconds. Afterwards, he was first charged for violating 22 D.C. Code § 405 (assault on a police officer) in D.C. Superior Court for allegedly "[striking] Officer Boone in the chest area with a closed fist," *see* Ex. 1 & Ex. 2, and later charged for violating the same D.C. Code statute in U.S. District Court for allegedly "slapp[ing] Officer Boone's arm," "yank[ing] Officer Boone's vest," and "bit[ing] Officer Boone[.]" *See* ECF No. 1-1 at 1. Then the government moved to dismiss the federal case without prejudice.

Mr. Jonson, through undersigned counsel, now respectfully moves this Court to dismiss

---

[1] Counsel will provide the Court with the video evidence upon request.

1

this case with prejudice and to order his records expunged. Given that the "Government offers no compelling reasons—indeed, hardly any reasons at all—for why it should be allowed to retain the option to stop and restart [Mr. Jonson's] federal prosecution," and the interests of justice are clearly in his favor, dismissal with prejudice and expungement are wholly appropriate and just. *Accord* Mem. Op. at 3, *United States v. Beidleman*, Case No. 25-cr-270 (SLS), ECF No. 23 (Oct. 1, 2025) (dismissing § 111(a) charge *with* prejudice).

## II. The complaint should be dismissed with prejudice under Rule 48.

In recent weeks, a troubling pattern has emerged. Faced with weak cases and concerning arrests—and failing in several to even secure an indictment before a federal grand jury—the government has repeatedly moved to dismiss cases without prejudice, for the express purpose of pursuing these weak cases in a more advantageous venue. A Magistrate Judge on this Court recently noted that his staff had counted at least 11 assault on officers cases the government has moved to dismiss since the federal surge: "It seems like one takeaway could be the government is filing these charges and investigating them afterward," the Court stated on the record. *See* Jordan Fischer, *Judge says US Attorney Pirro's office has dismissed 11 felony cases over the past month*, WUSA9 (Sep. 16, 2025).[2] Continuing prosecution in D.C. Superior Court while reserving for itself the power to recharge Mr. Jonson in federal court, possibly with a federal crime, should this become its preferred forum later—perhaps when a new grand jury is empaneled given the current grand jury's decisions—constitutes harassment and is contrary to the manifest public interest.

---

[2] Available at https://www.wusa9.com/article/news/crime/thiscreates-some-real-concerns-judge-says-us-attorney-pirros-office-has-dismissed-11-felony-casesover-the-past-month-matthew-sharbaugh-pichon-nguyen/65-7b122562-072d-4067-8c6c4e87ad0421d4 (last accessed Oct. 2, 2025).

Instead of dismissing without prejudice, as the government requested, this Court should dismiss this case with prejudice to protect Mr. Jonson and the integrity of the charging process.

Federal Rule of Criminal Procedure 48(a) "allow[s] courts to consider the 'public interest, fair administration of criminal justice and preservation of judicial integrity'" in determining whether to grant a dismissal without prejudice. *United States v. Poindexter*, 719 F. Supp. 6, 10 n.10 (D.D.C. 1989) (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988)); *see also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (same). The Court may reject a government motion for dismissal without prejudice and instead order a dismissal with prejudice. *Poindexter*, 719 F. Supp. at 10. Indeed, courts have an independent obligation to ensure that dismissal without prejudice would not prejudice a defendant.

Though there is "a strong presumption in favor of a no-prejudice dismissal, the ultimate decision in that regard depends upon the purpose sought to be achieved by the government and its effect on the accused." *Id*. "The primary reason for the 'leave of court' requirement [in Rule 48(a)] is to 'protect a defendant from harassment, through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution.'" *United States v. Pitts*, 331 F.R.D. 199, 202 (D.D.C. 2019) (quoting *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)); *see also Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977) (same).

Finding that a defendant would be subject to harassment through dismissal without prejudice does not require a showing of bad faith on the part of the government. "[T]he question is not whether the government was acting in bad faith, but rather whether the actions of the government objectively amounted to harassment." *Pitts*, 331 F.R.D. at 203; *see also United States*

*v. Salinas*, 693 F.2d 348, 353 (5th Cir. 1982) (indictment should have been dismissed with prejudice where government moved to dismiss due to dissatisfaction with selected jury). "A court can determine whether the potential for harassment renders a dismissal with prejudice in the public interest by looking at the *purpose* of the government's dismissal and the *effect* it has on the defendant." *United States v. Adams*, 777 F. Supp. 3d 185, 217 (S.D.N.Y. 2025) (quoting *United States v. Madzarac*, 678 F. Supp. 3d 42, 46 (D.D.C. 2023) (emphasis in *Madzarac*)). If dismissal would result in harassment to the defendant, dismissal without prejudice will *never* be in the public interest because "[i]t is obvious that the public interest is not served by harassing the defendant." *Salinas*, 693 F.2d at 351 n.15; *see also United States v. Omni Consortium, Inc.*, 525 F. Supp. 2d 808, 812 n.3 (W.D. TX 2007) (quoting *Salinas* favorably).

  Dismissal of a complaint for the purpose of re-bringing it at a time or place more favorable to the government is precisely the type of conduct that Rule 48(a) was designed to prevent. *Rinaldi*, 434 U.S. at 29 n.15 (describing protecting the defendant against "prosecutorial harassment," for instance, "charging, dismissing, and recharging"); *see also Beidleman* Mem. Op. at 3. The leave of court requirement included in Rule 48(a) has been characterized as a "power to check power," *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)—an "essential check on potential misconduct by the executive branch," *United States v. James*, 861 F. Supp. 151, 155 (D.D.C. 1994). "To ensure that the government's request for dismissal of criminal charges 'sufficiently protects the public,' the government may be required to submit 'a statement of reasons or underlying factual basis,' which must be 'substantial' to justify the dismissal and not 'a mere conclusory statement.'" *United States v. Mangia*, 2025 WL 266493 (D.D.C. Jan. 22, 2025) (Howell, J.) (quoting *Ammidown*, 497 F.2d at 620).

4

Here, the government has provided no "sufficient basis for avoiding dismissal with prejudice." *Poindexter*, 719 F. Supp. at 11. The government's sole argument for dismissal without prejudice is this: "Here, after careful review, the government has determined that the interests of justice favor prosecution in D.C. Superior Court over continued federal prosecution." ECF No. 3 at 2. But "a bare 'because I want to' assertion is [not] a sufficient explanation to permit the Government to keep a foot in the federal courthouse door." *Beidleman* Mem. Op. at 7 ("it is not at all clear why the Government's ability to more efficiently obtain a just outcome in D.C. Superior Court should permit the Government to retain the option of later returning to federal court to restart federal proceedings against Mr. Beidleman."). That the government believes it is in the interests of justice to pursue this case in Superior Court says nothing about the propriety of dismissing *this* case without prejudice. "If anything, it seems to suggest the opposite—that dismissal with prejudice would not meaningfully harm the public's interest in seeing that justice is done." *Beidleman* Mem. Op. at 7.[3]

Same too with the government's empty assertion that "This motion is made in good faith, is not intended to harass the defendant, and is consistent with the public interest." ECF No. 3 at 2. This simply restates the legal principles upon which this Court determines prejudice; it is free of any discussion of those principles themselves as applied to the facts of this case, *i.e.,* "the *purpose* of the government's dismissal and the *effect* it has on the defendant." *Adams*, 777 F.

---

[3] This appears especially true here where the only reason Mr. Jonson's D.C. Code offense can be brought in federal court is because of joinder with the federal offense charged against Khadeejah Jeffery in the same case, which has also now been dismissed. Without a case against Ms. Jeffery, the government would not be able to charge a lone D.C. Code offense in federal court and would be forced to litigate it in D.C. Superior Court.

Supp. 3d at 217 (emphasis in original).  It is as if the government believes that stating it makes it so.  It does not. *Accord Beidleman* Mem. Op. at 7.

Here, when the manager of Zooz left to contact the police, Mr. Jonson paid his $300 bill for the evening and started to leave. Video evidence shows that Mr. Jonson was walking away from the establishment when, with a half-circle of four officers around him, he gesticulated with his arms. Seemingly because of his arm movements, one officer reacts by reaching out towards Mr. Jonson's body. Mr. Jonson swatted the arm downwards. First four, then five, six, and seven officers, at least, violently take him down onto the sidewalk, pulling his arms, his legs, his body in all directions.



Mr. Jonson emerges, cuffed, from out under the dogpile of officers on top of him after 2 minutes and 40 seconds.

For these events, the government first filed a charge against Mr. Jonson in D.C. Superior Court on August 16, 2025. *See* Ex. 1, 2025 CMD 9568 Docket. He was charged with assault on a

police officer for allegedly "[striking] FBI Special Agent Pride in the chest area with a closed fist." *See* Ex. 2, 2025 CMD 9568 Gerstein. He was then charged in Federal Court on August 27, 2025, for the same D.C. Code offense of assault on a police officer, for allegedly "slapp[ing] Officer Boone's arm," "yank[ing] Officer Boone's vest," and "bit[ing] Officer Boone[.]" *See* ECF No. 1-1 at 1. According to the complaint, "Officers took JONSON to the ground." *Id.* Mr. Jonson sustained scratches, bruising, and swelling from the officers' tactics.





Then, on September 18, 2025, the government moved to dismiss the federal case without prejudice after "determin[ing] that the interests of justice favor prosecution in D.C. Superior Court over continued federal prosecution." ECF No. 3 at 2.

This timeline makes clear that the government is simply seeking a more advantageous position, whether it be here, D.C. Superior Court, or here again if that becomes favorable. But "the government is not free to indict, dismiss, and reindict solely to achieve a more favorable prosecutorial posture." *United States v. Fields*, 475 F. Supp. 903, 908 (D.D.C. 1979). In fact, this

7

strategic use of dismissal without prejudice is just what Rule 48 prohibits. *See Pitts*, 331 F.R.D at 201 ("[b]ecause dismissal without prejudice constitutes a strategic use of Rule 48 prohibited under District of Columbia Circuit precedent…and objectively amounts to prosecutorial harassment, the Court will dismiss the indictment with prejudice"); *United States v. Simmons*, Case No. 18-cr-344 (EGS), 2022 WL 1302888 at *19 (D.D.C. May 2, 2022) (Sullivan, J.) ("Courts have found that government conduct constitutes harassment if the reason for the dismissal is to gain a tactical advantage."). The government is seeking leave to keep open the option of refiling a federal complaint at some later time—perhaps when a new grand jury is empaneled that, unlike the current one, does not repeatedly reject the government's weak cases. Doing so "would objectively amount to harassment" by allowing "the prosecutor to dismiss charges but nevertheless keep them in abeyance for an indefinite period of time in the hope of expectation that something will turn up to remove the complications" of the initial prosecution. *Poindexter*, 719 F. Supp. at 11. Courts should not dismiss charges without prejudice to permit the government to "'*commence[] another prosecution at a different time or place deemed more favorable to the prosecution.*'" *Id.* (emphasis in original) (quoting *Ammidown*, 497 F.2d at 620). "[S]uch a strategy of dismissing a case without prejudice in order to bring it again under more advantageous circumstances is precisely the kind of tactical situation that is prohibited by Rule 48(a) and its progeny." *United States v. Borges*, 153 F. Supp. 3d 216, 220 (D.D.C.) (quotation marks omitted); *Salinas*, 693 F.2d at 353.

Protecting the defendant from "prosecutorial harassment, *e.g.*, charging, dismissing, and recharging," must be the court's "primary" consideration when deciding whether to grant the government leave to dismiss post-indictment. *Rinaldi*, 434 U.S. at 30 n.15; *see also United States v.*

*Cox*, 342 F.2d 167, 171 (5th Cir. 1965). "The harassment to which [Mr. Jonson] is exposed by a dismissal without prejudice is not that he may be prosecuted in one court rather than the other. It is that he could be caught in a cycle of the Government repeatedly 'charging, dismissing, and recharging' him in federal and local court 'over his objection' while he is denied his constitutional and statutory right to a speedy trial and an opportunity to prove his innocence." *Beidleman* Mem. Op. at 8 (quoting *Rinaldi*, 434 U.S. at 29 n.15). This "prospect of reindictment" cannot be permitted to "hang[] like the proverbial Sword of Damocles over the accused." *Adams*, 777 F. Supp. 3d at 216.

Several courts in this district have dismissed cases with prejudice to avoid similar government attempts to obtain a tactical advantage. *See, e.g., Pitts*, 331 F.R.D. 199 (dismissing with prejudice where government failed to timely obtain DNA testing consistent with court's discovery order and sought dismissal to obtain testing and bring charges again); *Borges*, 153 F. Supp. 3d at 220 (D.D.C. 2015) (dismissing with prejudice where government sought dismissal without prejudice in the hope that witness problem would later be cured); *Poindexter*, 719 F. Supp. 6 (dismissing with prejudice charges government sought to dismiss without prejudice because classified information precluded presentation of evidence). Just yesterday, Judge Sooknanan did just that in a similar § 111(a) case brought in both Federal and D.C. Superior Courts. *See generally Beidleman* Mem. Op., Case No. 25-cr-270 (SLS).

What is more, the unusual circumstances of this case amid a spate of similar cases support dismissal with prejudice. *Borges*, 153 F. Supp. at 220 (finding dismissal with prejudice warranted where facts unusual and unlike typical cases). Dismissal with prejudice is particularly appropriate where "the "integrity of the government's case has been tainted." *Id*. There are many

irregularities here. First are the glaring inconsistencies in the Superior Court charging document and the District Court charging document. *Compare* Ex. 2 *with* ECF No. 1-1 at 2. Then, there is the troubling pattern of which this case is just one example: a "charge first, ask questions later" mentality at the U.S. Attorney's Office, where they are first "filing these charges and [only] investigating them after they're filed." Dave Jamieson, *Jeanine Pirro's Cases Keep Falling Apart, And The Judges Have Had Enough*, HuffPost (Sep. 18, 2025).[4] In fact, the frequency of "no-bills" by grand juries in recent weeks demonstrates just how unusual this entire recent surge in unwinnable cases is. Scott MacFarlane, *D.C. grand jurors reject latest wave of Justice Dept. indictment requests*, CBS News (Sept. 3, 2025) (describing multiple former AUSAs who have never seen a grand jury reject the government's indictment);[5] Carrie Johnson, *As Trump cracks down on D.C. crime, grand juries emerge as a check on overreach*, NPR (Sept. 5, 2025) (describing the same).[6] This Court should dismiss this case with prejudice to protect Mr. Jonson from harassment and send a clear message that the current charge first, investigate later process is contrary to the manifest public interest.

**III.     Mr. Jonson's records related to his federal case should be expunged or sealed.**

There is simply no justifiable reason to harm Mr. Jonson any further by allowing these baseless charges in federal court to remain on his record. There are two mechanisms for this Court to erase this federal case from Mr. Jonson's records: expungement and sealing. *First*,

---

[4] Available at https://www.huffpost.com/entry/jeanine-pirro-prosecutions-judges_n_68cc25bbe4b0aa8d99feaa32 (last accessed Oct. 1, 2025).

[5] Available at  https://www.cbsnews.com/news/d-c-grand-jury-reject-justice-dept-indictment-requests/ (last accessed Oct. 1, 2025).

[6] Available at https://www.npr.org/2025/09/05/nx-s1-5526925/as-trump-cracks-down-on-d-c-crime-grand-juries-emerge-as-a-check-on-overreach (last accessed Oct. 1, 2025).

10

"[c]ourts have the inherent, equitable power to expunge arrest records." *Livingston v. United States Department of Justice*, 759 F.2d 74, 78 (D.C. Cir. 1985). *Second*, per D.C. Code § 16-806(a)(1), D.C. law has an explicit mechanism for sealing records where a case is brought but dismissed in these circumstances.

Expungement is appropriate both where there is an "unlawful … arrest" and where "equitable considerations" support it. *United States v. McKnight*, 33 F. Supp. 3d 577, 581 (D. Md. 2014) (noting that "the courts clearly have ancillary jurisdiction to expunge records of unlawful … arrests," while expunging arrest record where individual completed pretrial diversion program using its equitable discretion to "manage its proceedings, vindicate its authority, and (in particular) effectuate its decrees." (internal quotations omitted)).

As one court explained:

> In the absence of a specific denial of power, this court may fully effectuate its jurisdiction and do complete justice in the cases before it. *Morrow v. District of Columbia,* [] 417 F.2d 728, 737-738 [(D.C. Cir. 1969)]. *Cf.*, 28 U.S.C. § 1651 (All Writs Statute). This plenary power undoubtedly includes the authority to order expunction of criminal records where circumstances demand such action. *Menard v. Mitchell*, [] 430 F.2d 486 ([D.C. Cir.] 1970); *Kowall v. United States*, 53 F.R.D. 211, 213 (W.D. Mich. 1971) (expunction ordered in connection with granting relief under 28 U.S.C. § 2255); *United States v. Kalish,* 271 F.Supp. 968 (D.P.R. 1967). . . . Expunction has generally been ordered where the arrest was without probable cause, *Menard v. Mitchell*, *supra*, for harassment, or where there are extraordinary circumstances such as mass arrest. *See, e.g., Wheeler v. Goodman*, 306 F.Supp. 58, 65-66 (W.D.N.C. 1969).

*United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976) (granting expungement where the court dismissed the indictment upon the filing of a motion to quash).

Sealing is also appropriate here. Per D.C. Code § 16-806(a)(1), this Court <u>shall</u> order the sealing of "all criminal records and court proceedings" related to "[c]itations, arrests, and charges for the commission of a criminal offense," provided that the case "was terminated by the

11

prosecutor or otherwise reached a final disposition and did not result in a conviction or acquittal"; and the motion "demonstrate[es], by a preponderance of the evidence, that it is in interests of justice to seal the records." When deciding if sealing is in the interests of justice, a court weighs three factors: (1) "the interests of the movant in sealing the publicly available records of their citations, charges, arrests, or convictions"; (2) "The community's interest in furthering the movant's rehabilitation and enhancing the movant's reintegration into society through education, employment, and housing…"; and (3) "The community's interest in retaining access to those records, including the interest of current or prospective employers in making fully informed hiring or job assignment decisions and the interest in promoting public safety." D.C. Code § 22-806(b)(1).[7]

Just as dismissal is in the interests of justice, so too is expungement or sealing wholly appropriate in these extraordinary circumstances. As in *McKnight* and *Bohr*, "[Mr. Jonson's] case never reached the trial stage[,]" and "[w]ithout subsequent proceedings, expunction of the [] arrest records would be a simple and brief matter." *Bohr*, 406 F. Supp. at 1219. Moreover, the

---

[7] "The effect of a criminal record sealing shall be to remove all records related to a citation, arrest, charge, prosecution, disposition, or conviction from public view and to permit restricted, nonpublic access by specific parties for specific purposes." D.C. Code § 22-807(a). This nonpublic, restricted access file will be available to those entities listed in D.C. Code § 801(5)(A)-(F) and only for the reasons listed in D.C. Code § 16-807(d)(1). Once the Court orders seal, and within 90 days, "the Clerk and each prosecutor and law enforcement, corrections, pretrial, and community supervision agency shall: (A) Eliminate from all publicly available physical and computerized records any references that identify the person as having been cited, arrested, prosecuted, or convicted[.]" *Id* § 807(c)(1). In response to public inquiries, these officials shall reply that "no records are available[.]" *Id.* § 807(c)(1)(C). Within 90 days of the order to seal, each prosecutor and law enforcement, corrections, pretrial, and community supervision agency must file a certification with the Court stating that "to the best of its knowledge and belief, all references that identify the person as having been cited, arrested, prosecuted, or convicted have been sealed." *Id.* § 807(c)(2).

balance of equities is clearly in Mr. Jonson's favor. Mr. Jonson is a Senior Investigator, Special Investigations Unit at Geico. Even once Zooz called the police on him, he paid his $300 bill. In September 2020, he put his life in danger to save a 17-year-old who was drowning in the Potomac River, for which he received recognition from the Red Cross, President Trump, and Montgomery County Fire & Rescue. *See* Ex. 3, Certificates; *see also* NBC, *Men Brave Potomac's Strong Currents to Save Drowning Teen*, NBC Washington (Sep. 15, 2020).[8] When interviewed about his decision, along with his two friends, to jump into the "powerful and exhausting" current, he stated, ""If I had kids [of] my own, I'd want someone to do that for my child as well[.]" *Id.*

      Yet despite Mr. Jonson's bravery, honesty, and accomplishments, "[t]he potential that improper inferences will be drawn from arrest records is significant." *Id*. at 1220 (citing *Morrow v. District of Columbia,* supra, at 742; *Menard v. Mitchell,* supra, at 491). His arrest led to ongoing financial hardship, as well as emotional and psychological distress. He worries about missing work and other responsibilities, losing his job, facing barriers to future employment opportunities because of background checks, additional financial burdens, and damage to his personal and professional reputation from having a federal case on his record. There is simply no valid interest that the government or the public has in maintaining access to records that impugn Mr. Jonson with the charge of assault on a police officer, while threatening his current and future livelihood and stellar reputation, which the government itself claims is better pursued in another venue. Mr. Jonson, conversely, has a strong interest in sealing records of a federal court case so that he is not harmed by their availability in the public record, while the community clearly benefits from no

---

[8] Available at https://www.nbcwashington.com/news/local/men-brave-potomacs-strong-currents-to-save-drowning-teen/2418925/ (last accessed Oct. 2, 2025).

further impediments being placed in his path towards rehabilitation and reintegration.

Expungement or sealing is even more appropriate in a climate where Mr. Jonson is not the only defendant to be charged and then have the charges dismissed "after further reflection, often the night before the defendant was due in court." Dave Jamieson, *Jeanine Pirro's Cases Keep Falling Apart, And The Judges Have Had Enough*. His is one of at least a dozen such cases—a number seemingly climbing higher every day—that began with baseless federal charges, a situation "in service of promoting Trump's crackdown politically" and not based in law or fact. *Id.*; *see also* Dave Jamieson, *How 'Horseshit' Criminal Cases Help Trump Hype His DC Police Takeover*, HuffPost (Aug. 28, 2025).[9] This situation is sadly reminiscent of other unlawful mass arrest records that the D.C. Circuit has ruled were entirely proper to expunge.

In *Sullivan v. Murphy*, the appellate court underscored the following concerns, among others, that meant expungement was appropriate: (1) the police records were the product of a process that did not "provide protection against arrest records made without basis in fact"; (2) "the very presence of [the] records carrie[d] the strong implication that the underlying arrest and detention were somehow justified"; and (3) "[t]o the extent that the action of the police officer calling for the arrest reflected considerations other than bringing lawbreakers to book, the inference that would naturally be drawn from these records is unwarranted." 478 F.2d at 969. So too here. The process through which police and the U.S. Attorney's Office are bringing charges in federal court fails to "provide protection" that the charge is based in fact; these records' very existence create "the strong implication" that they were "justified" even though the contradict

---

[9] Available at https://www.huffpost.com/entry/trump-dc-police-takeover_n_68b08bece4b0d087ed3f2b3c (last accessed Oct. 1, 2025).

the video evidence and the Superior Court charging document; and yet because they are a product of a charge first, investigate later mentality, the implication of a justified federal case is "unwarranted." Expungement or sealing of Mr. Jonson's case is therefore appropriate and just.

## IV.   Conclusion

For the foregoing reasons and any other reasons the Court deems appropriate, the Court should dismiss the charges against Mr. Jonson with prejudice and expunge or seal his record.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Joanna Munson Perales*
JOANNA MUNSON PERALES
Research & Writing Attorney
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500
Joanna_Perales@fd.org
