UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CARLTON JONSON,**<br><br>**Defendant.** | **No. 25-mj-177-2** |

**MEMORANDUM OPINION AND ORDER**

Carlton Jonson seeks the expungement and sealing of his arrest records.[1] For the reasons set forth herein, the Court DENIES Mr. Jonson's motion.

## I. BACKGROUND

On August 16, 2025, officers arrested Carlton Jonson and Khadeejah Jeffery in Southwest Washington, D.C. *See* Compl. 2, ECF No. 1. Mr. Jonson was charged the same day in the Superior Court of the District of Columbia with assault on a police officer, in violation of 22 D.C. Code § 405(b), based on an allegation that he struck an officer in the chest area with a closed fist. *See United States v. Jonson*, No. 2025 CMD 009568 (D.C. Sup. Ct. Aug. 16, 2025). On August 27, 2025, the government filed similar charges in this Court via criminal complaint. *See* Compl. at 1. The government charged Mr. Jonson here with violating 22 D.C. Code § 405 and Ms. Jeffery with violating 18 U.S.C. § 111 and 22 D.C. Code § 405. *See id.* at 1. Concurrently, the government

[1] Mr. Jonson also seeks dismissing the case with prejudice. That request is not addressed here. A motion to involuntarily dismiss a criminal action is a dispositive matter, and a magistrate judge lacks authority to enter a final order on it. *See* 28 U.S.C. § 636(b)(1)(A).

stayed the pending charges against Mr. Jonson in D.C. Superior Court. *Jonson*, No. 2025 CMD 009568.

On September 18, 2025, the government voluntarily moved to dismiss the criminal complaint in this case without prejudice. *See* Gov.'s Mot. to Dismiss, ECF No. 3. The government's only explanation was that it had "determined that the interests of justice favor prosecution in D.C. Superior Court over continued federal prosecution." *Id.* at 2. On September 22, 2025, the Court granted the motion, but reserved the questions of dismissal with prejudice and expungement for further briefing. *See* Min. Order (Sept. 22, 2025).

On October 3, 2025, Mr. Jonson moved to dismiss the complaint with prejudice and to expunge or seal his federal case records. *See* Def.'s Mot. to Dismiss with Prejudice & for Expungement/Sealing ("Def.'s Mot."), ECF No. 7. The government opposed dismissal with prejudice and expungement, but did not address Mr. Jonson's request to seal. *See* Gov.'s Suppl. Br., ECF No. 10,

On October 9, 2025, Mr. Jonson pleaded guilty to one count of Assault on a Police Officer in the related Superior Court case. *See Jonson*, No. 2025 CMD 009568 (D.C. Sup. Ct. Oct. 9, 2025).

## II. DISCUSSION

"It is well established . . . that courts have the inherent, equitable power to expunge arrest records." *Livingston v. U.S. Dep't of Just.*, 759 F.2d 74, 78 (D.C. Cir. 1985).[2]

[2] "When sitting in equity, moreover, the court must 'mould each decree to the necessities of the particular case,' emphasize '[f]lexibility rather than rigidity,' and retain '[t]he qualities of mercy and practicality [that] have made equity the instrument for nice adjustment and reconciliation." *Livingston*, 759 F.2d at 78 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).

### A. **Jurisdiction**

Magistrate judges derive their criminal jurisdiction from 28 U.S.C. § 636 and 18 U.S.C. § 3401. *See* § 636(b)(1) ("[A] judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court."). Among the core statutory duties of a magistrate judge is determining whether to authorize a criminal complaint and issue an arrest warrant. *See* Fed. R. Crim. P. 4 (describing the procedures for a complaint and an arrest warrant). These statutes and Rules do not speak to expungement. Still, the absence of explicit language does not preclude the jurisdiction to do so. *See United States v. Crane*, 979 F.2d 687, 690 (9th Cir. 1992) (holding that even though § 3401 did not explicitly authorize magistrate judges to revoke supervised release in misdemeanor cases, magistrate judges could do so where they had imposed the original sentence).

Specifically, 28 U.S.C. § 636(b)(3) provides that "[a] magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." "Additional duties" has been interpreted liberally.[3] The Supreme Court has defined "additional duties" to include only those duties that "bear some relation to the specified duties that the statute assigned to magistrate [judges]." *Peretz v. United States*, 501 U.S. 923, 930 (1991) (quotation omitted). Indeed, "[t]he generality of the category of 'additional duties' indicates that Congress intended to give federal [magistrate] judges significant leeway to experiment with possible

[3] In construing a magistrate judge's jurisdiction, courts have emphasized flexibility and efficiency. *See Peretz v. United States*, 501 U.S. 923, 932–33 (1991) ("[A]bsent concerns about raising a constitutional issue or depriving a defendant of an important right, we should not foreclose constructive experiments [involving magistrate judges' jurisdiction] that are acceptable to all participants in the trial process and are consistent with the basic purposes of the statute."); *see also Gov't of Virgin Islands v. Williams*, 892 F.2d 305, 308 (3d Cir. 1989) ("Given the bloated dockets that district courts have now come to expect as ordinary, the role of the magistrate [judge] in today's federal judicial system is nothing less than indispensable.").

improvements in the efficiency of the judicial process that had not already been tried or even foreseen." *Id.* at 932.

This construction of magistrate judges' jurisdiction, particularly as it relates to their role in adjudicating motions for expungement, finds support in *United States v. Vasquez*, 74 F. Supp. 2d 964, 967 (S.D. Cal. 1999). There, the court held that "[t]he authority of the magistrate judge to order expungement of a misdemeanor conviction record is [] implicit in the authority to enter the conviction *in the first place*." *Id.* (emphasis added). "The principle underlying *Vasquez* is that judicial authority to act carries with it the corollary power to undo the act. That reasoning applies with equal force here. Because magistrate judges of this Court have the authority to issue an arrest warrant *in the first place*, they also have the authority to wipe that record from the docket." *United States v. Riley*, 806 F. Supp. 3d 38, 43 (D.D.C. 2025); *see also United States v. Steelwright*, 179 F. Supp. 2d 567, 571 (D. Md. 2002) ("It is consistent with these statutes to confer jurisdiction to a magistrate judge to consider a request for expungement in a case where a magistrate judge initially presided over the defendant's case."). To hold otherwise would create an illogical gap in jurisdiction. *Cf. United States v. Pickard*, 733 F.3d 1297, 1300 (10th Cir. 2013) ("Once a court orders documents before it sealed, the court continues to have authority to enforce its order sealing those documents, as well as authority to loosen or eliminate any restrictions on the sealed documents," even if the case in which the documents were sealed has ended). Thus, the power to expunge "falls comfortably within the range of 'additional duties' contemplated by Section 636(b)(3)." *United States v. Carias Torres*, No. 25-mj-146, 2026 WL 1469447, at *3 (D.D.C. May 22, 2026).

That reasoning applies directly here. The criminal complaint against Mr. Jonson was authorized by a magistrate judge of this Court. *See* Compl. Mr. Jonson's requested expungement

thus "bear[s] some relation to the specified duties that the statute assigned to [his] magistrate[] [judge]": authorizing his complaint in the first place. *Peretz*, 501 U.S. at 930. Recognizing such authority is not a borderline question of jurisdiction like supervising voir dire in a felony case, *see id.* at 932–33, or conducting the evidentiary portion of a felony sentencing hearing, *see United States v. Ruiz-Rodriguez*, 277 F.3d 1281, 1285 (11th Cir. 2002). And characterizing expungement as an "additional duty" under § 636 is particularly apt here because Mr. Jonson seeks expungement of a dismissed complaint and its associated arrest record, not a conviction. *Cf. United States v. Pinto*, 1 F.3d 1069, 1070 (10th Cir. 1993) (distinguishing "expunging the arrest record of a presumably innocent person" from "expunging the conviction of a person adjudged as guilty in a court of law."). Accordingly, the Court "is empowered to expunge an arrest warrant." *Carias Torres*, 2026 WL 1469447, at *3; *see Riley*, 806 F. Supp. 3d 38, 43 (same). The question then is whether expungement is warranted.

**B. <u>Expungement</u>**

There is "no 'standalone right to expungement of government records' [] recognized in this Circuit." *United States v. Douglas*, 282 F. Supp. 3d 275, 278 (D.D.C. 2017) (quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 536 (D.C. Cir. 2015)). Instead, "[t]he court may order expungement where it is required or authorized by statute, or in exercise of its inherent equitable powers." *United States v. Derouen*, 279 F. Supp. 3d 298, 299 (D.D.C. 2018) (citing *United States v. Archer*, 2012 WL 5818244, at *1 (D.D.C. Nov. 13, 2012)).

Here, Mr. Jonson identifies no federal statute authorizing expungement of a federal arrest or complaint record. *See* Def.'s Mot. at 10–15. Instead, Mr. Jonson cites D.C. Code § 16-806(a)(1). *See id*. at 11–12. However, § 16-806(a)(1) relates to sealing by the Superior Court for D.C. Code

violations. Accordingly, this Court considers only whether expungement is warranted under its inherent equitable powers.

The Court's inherent powers are typically invoked only in cases that present evidence of "a lack of probable cause coupled with specific circumstances, flagrant violations of the Constitution, or other unusual and extraordinary circumstances." *Doe v. Webster*, 606 F.2d 1226, 1230 (D.C. Cir. 1979); *see United States v. Blackwell*, 45 F. Supp. 3d 123, 124 (D.D.C. 2014). The concept of "extraordinary circumstances" is "nebulous." *Riley*, 806 F. Supp. 3d at 44 (citing *United States v. McKnight*, 33 F. Supp. 3d 577, 584 (D. Md. 2014)). Courts have opined that extraordinary circumstances "most clearly exist in cases where the underlying arrest or conviction was unlawful and/or unconstitutional, government misconduct is alleged, or the statute on which the arrest was based is subsequently found unconstitutional." *Id*. As the D.C. Circuit has described the "general rule": the "expungement of an arrest record is appropriate when serious governmental misbehavior leading to the arrest, or unusually substantial harm to the defendant not in any way attributable to him, outweighs the government's need for a record of the arrest." *Doe*, 606 F.2d at 1231.

Mr. Jonson does not base his request for expungement on an argument that his arrest lacked probable cause. *See* Def.'s Mot. at 10–15. Rather it appears his arguments most closely align with an "extraordinary circumstances" request. *See id.* at 12–13. Specifically, Mr. Jonson argues that the arrest created hardship on him: financial strain, emotional distress, and the risk that a criminal record will complicate future employment. *See id.* at 13–14. Sadly, this argument is unavailing. Mr. Jonson pleaded guilty in Superior Court to Assault on a Police Officer. *See Jonson*, No. 2025 CMD 009568 (D.C. Sup. Ct. Oct. 9, 2025). That conviction involved the same facts and violation of law as the federal complaint. The government's need to retain a record varies with how a case is resolved: "If there was no crime, or if the government concedes that the defendant was not in

any way implicated in its commission, it would appear to have no need for the records at all[;] [i]f, however, the charges are dismissed for some other reason ([e.g.], a plea bargain) . . . there may arguably be a need to retain the record for investigatory purposes in the event that another, similar, offense is committed." *Doe*, 606 F.2d at 1231 n.15.

The Court is sympathetic to the collateral consequences Mr. Jonson raises. As to social stigma, "[e]ven if no direct economic loss is involved, the injury to an individual's reputation may be substantial." *Natwig v. Webster*, 562 F. Supp. 225, 229 (D.R.I. 1983) (quoting *Menard v. Mitchell*, 430 F.2d 486, 490–91 (D.C. Cir. 1970)) (plaintiff seeking injunction requiring Director of FBI to expunge records relating to his prior arrests). And "[e]conomic losses themselves may be both direct and serious. Opportunities for schooling, employment or professional licenses may be restricted or nonexistent as a consequence of the mere fact of an arrest." *Id*. "Employment rejections due to a criminal record not only have detrimental effects on the individuals involved, but have detrimental effects on society. Lack of employment has been correlated to increased recidivism." *McKnight*, 33 F. Supp. 3d at 586. "It is sufficient to say here that an arrest record alone can create serious adverse consequences for those who have been arrested in the past, notwithstanding the ultimate disposition of the case." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977) (Appellant seeking expungement of record after dismissal of indictment). These harms indeed could be the basis for an "extraordinary circumstances" finding.

However, expungement is not appropriate if it cannot remedy the alleged harm from these collateral consequences. That is the case here. Mr. Jonson has more than just an arrest for this conduct on his record. He has an associated conviction resulting from his guilty plea. Accordingly, expunging the arrest record in this case would not alleviate the collateral consequences he identifies. The Superior Court conviction which relates to his arrest would remain. And a

conviction causes equal, if not greater harm than an arrest record.

The cases Mr. Jonson relies upon are misplaced. In *McKnight* and *Bohr*, "the Government did not oppose the expungement on any grounds." 33 F. Supp. 3d at 584–85, 588; *see United States v. Bohr*, 406 F. Supp. 1218, 1219 (E.D. Wis. 1976) (same). That is not the case here. In *Sullivan v. Murphy*, the D.C. Circuit ordered the expungement of mass-arrest records that lacked probable cause. 478 F.2d 938, 968 (D.C. Cir. 1973). The court was concerned that allowing the arrest records to stand implied that the underlying arrests were somehow justified. *See id.* at 969. Again, Mr. Jonson's case is different. Mr. Jonson admitted that he assaulted a police officer during the same encounter that gave rise to the federal complaint. *Jonson*, No. 2025 CMD 009568. His arrest record accurately reflects a criminal incident, not an unsupported or mistaken arrest. Maintaining the arrest record does not create any false or unwarranted implication. Thus, there is no basis for expungement.

### C. <u>Sealing</u>

Mr. Jonson separately seeks to seal his federal case records under D.C. Code § 16-806(a)(1) and (b)(1). *See* Def.'s Mot., at 11-12.

The Court cannot grant this request. D.C. Code § 16-806 defines "Court" to mean "the Superior Court of the District of Columbia." D.C. Code § 16-801(4). That is not this Court. *See United States v. Hall*, 2020 WL 1286386, at *2 (Mar. 18, 2020) (The court found "no indication that [a companion sealing provision in D.C. Code § 16-803(f)] (which defines the 'Court' as the 'Superior Court') applies in this federal court.").

## III. CONCLUSION

The Court commends Mr. Jonson for his employment history and for his 2020 rescue of a drowning teenager, for which he was recognized by the American Red Cross and Montgomery

County Fire & Rescue. *See* Def.'s Mot., at 13–14; *id.* Ex. 3. The difficulties he identifies from having an arrest record—including financial strain, professional and reputational harm, and future employment challenges—are threats not only to his successful reentry, but to public safety. Still, his guilty plea for related conduct forecloses expungement here.

Date: August 21, 2026

ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE